UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DONALD A. BURNS**,

       Plaintiff,

       v.

**WALTER C. ANDERSON**,

       Defendant.

Case No. 1:16-mc-02509 (TNM)

## MEMORANDUM OPINION

Donald Burns seeks to collect a judgment against Walter Anderson and others exceeding $11 million. He has conducted discovery to identify Anderson's recoverable assets. Through his efforts, Burns learned that Anderson was the designated beneficiary of his late-mother's trust. Anderson, however, recently disclaimed his interest in the trust's assets.

Burns claims that this disclaimer violated an injunction that barred Anderson from transferring or disposing of funds, interests, or assets that he received or would receive from his late-mother's estate. Burns moves to enforce the injunction and for civil contempt against Anderson. For the following reasons, the Court will grant the motion in part.

**I.**

In 2016, Burns registered a judgment in this District exceeding $11 million against Anderson and others.[1] *See* Registration of Foreign J., ECF No. 1. This case has

---

[1] The judgment was entered in 2003 and amended in 2016.

1

remained open to allow Burns to determine the scope and location of Anderson's recoverable assets. Burns has pursued several paths to discover this information. He deposed Anderson. *See* Order Granting Pl.'s Mot. to Compel, ECF No. 8. And he submitted questions for Anderson to answer. *See* Min. Order (May 3, 2018). Burns also sought information from Anderson's then-living mother, Beverly Anderson Heinle. *See, e.g.*, Mem. Order, ECF No. 25; Order, ECF No. 36. He requested "additional discovery related to the assets that Mr. Anderson has received, or is entitled to receive" from his late-mother's estate. Notice of Mot. for Injunctive Relief at 5, ECF No. 45.[2]

While he pursued this discovery, Burns moved for an injunction to prevent Anderson from "transfer[ring] or dispos[ing] of such assets during the pendency of this litigation." *Id.* The Court granted the motion and issued the following injunction in November 2019:

> Effective immediately and until further order of this Court, the Defendant is hereby enjoined from transferring or disposing of any funds, real property, ownership interest or other interest, or any other asset that he has received or may in the future receive from the estate of his late mother, Beverly Heinle, or otherwise as a result of her passing, without prior court approval. Notwithstanding this injunction, the Defendant may accept reimbursements from Ms. Heinle's estate up to $5,000 for funeral and related expenses and may continue to collect a monthly income from the family's business entities in the same amount he was receiving before Ms. Heinle's passing.

Order at 1–2 ("November 2019 Injunction"), ECF No. 50.

Burns then learned that Anderson was the designated beneficiary of his parents' trust ("Heinle Trust") and that he disclaimed any interest in the trust's assets shortly after the November 2019 Injunction. *See* Status Report (Jan. 24, 2020), ECF No. 52. After the

---

[2] All page citations refer to the page numbers that the CM/ECF system generates.

parties' unsuccessful mediation, *see* Order Referring Case to Mediation, ECF No. 62, Burns asked that the litigation remain open for the Court to "consider a forthcoming motion by [him] regarding Mr. Anderson's violation of a prior order of this Court." Status Report at 1 (Dec. 22, 2020), ECF No. 71 ("December Status Report").

Burns moves to enforce the November 2019 Injunction and for civil contempt against Anderson. *See* Notice of Mot. for J. of Civil Contempt & to Enforce Inj. ("Pl.'s Mot."), ECF No. 72. He asks the Court to invalidate Anderson's disclaimer. *Id.* at 6. He also wants Anderson to submit a report every three months for the next three years on "the assets and financial affairs of himself and the companies in which he has an interest or management role." *Id.* at 6.

Anderson separately requests a hearing on the motion and to answer any final questions about his recoverable assets. *See* Def.'s Mot. for Hr'g, ECF No. 78.

**II.**

"District courts have the authority to enforce the terms of their mandate." *Salazar v. District of Columbia*, 236 F. Supp. 3d 411, 413 (D.D.C. 2017); *cf. Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) ("The power of an original panel to grant relief enforcing the terms of its earlier mandate is clearly established in this Circuit[.]"). "And a motion to enforce is the usual method for requesting a court to interpret its own judgment and to compel compliance if necessary in light of that interpretation." *Anglers Conservation Network v. Ross*, 387 F. Supp. 3d 87, 93 (D.D.C. 2019) (cleaned up). A court may grant a motion to enforce when a "plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Salazar*, 236 F. Supp. 3d at 413 (cleaned up).

3

Relatedly, courts "have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "A civil contempt action is characterized as remedial in nature, used to obtain compliance with a court order or to compensate for damages sustained as a result from noncompliance." *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 29 (D.D.C. 2014) (cleaned up). The moving party must show "by clear and convincing evidence that: (1) there was a clear and unambiguous order in place; (2) that order required certain conduct by Defendant[]; and (3) Defendant[] failed to comply with that order." *Id.* at 29–30. The burden then shifts to defendant to justify noncompliance. *Id.* at 30. The Court "need not find that [the] failure to comply with the order[] was willful or intentional because a party's intent is irrelevant when making a civil contempt determination." *Id.* (cleaned up).

The Court recognizes that Anderson is proceeding unrepresented. So it will "construe [his] *pro se* filings liberally, holding them to less stringent standards than formal pleadings drafted by lawyers." *Jacobs v. Not-For-Profit Hosp. Corp.*, 285 F. Supp. 3d 316, 318 (D.D.C. 2018) (cleaned up).

### III.

The Court first considers whether Anderson violated the November 2019 Injunction. If he did, the next question is what relief, if any, Burns should receive for the violation.

### A.

The Court issued the November 2019 Injunction before Anderson executed his disclaimer. *See* Def.'s Resp. to Pl.'s Mot. for J. of Civil Contempt & to Enforce Inj. ("Def.'s Resp.") Ex. A, ECF No. 74-1. Its terms are clear and unambiguous. Anderson

4

cannot "transfer[] or dispos[e] of any funds, real property, ownership interest or other interest, or any other asset that he has received or may in the future receive from the estate of his late mother, Beverly Heinle, or otherwise as a result of her passing, without prior court approval."  Nov. 2019 Injunction.

Anderson was the designated beneficiary to the Heinle Trust.  *See* Def.'s Resp. Ex. B § 5.2 at 11, ECF No. 74-1 ("The trustee shall administer the balance of the [Heinle] Trust, after any specific distributions designated by the Settlors have been made for the benefit of the Trust Settlor's son, Walter Anderson[.]").  Yet Anderson "disclaim[ed] any beneficial interest in any and all assets" of that trust.  *Id.* Ex. A at 2.  He intended the disclaimer "to be permanent and irrevocable."  *Id.*  And as Anderson admits, he executed this disclaimer "shortly after the injunction was put into effect."  Def.'s Resp. at 1.

His disclaimer violated the November 2019 Injunction.  As beneficiary, Anderson expected to receive the "balance of the [Heinle] Trust."  Def.'s Resp. Ex. B § 5.2 at 11.  Anderson's beneficiary designation thus was an "interest" in his late-mother's estate.  So he could not "transfer[] or dispos[e]" of that interest without prior court approval.  He did not seek, let alone receive, permission to execute the disclaimer.

Anderson also fails to justify his decision to renounce his interest in the Heinle Trust assets.  He represented that he did so "specifically to avoid having to continue wrangling over the limited assets held by the trust."  Resp. to Status Report at 3, ECF No. 53.  Anderson also asserts that he executed the disclaimer "in the hopes that this would reduce the remaining issues under dispute in this proceeding, and allow the matter to be resolved sooner."  Def.'s Resp. at 2 n.1; *see also id.* at 3 ("[Anderson] hoped that the Disclaimer of Interest would remove the Heinle Trust as a point of contention in this

5

proceeding."). Anderson's asserted desire for expedited litigation does not excuse his clear violation of the Court's order. Even if his actions were innocent, Anderson's intentions are "irrelevant." *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981) ("[T]he intent of the recalcitrant party is irrelevant.").

Anderson also contends that "[s]imply being named as a 'beneficiary' of a trust does not create any legal obligation to accept assets from that trust." Def.'s Resp. at 3. To Anderson, the disclaimer "could not have possibly [] had the effect of 'transferring or disposing' of any Heinle Trust assets because none of those assets was ever owned by [him]." *Id.* at 4. Not so.

Anderson assumes that the November 2019 Injunction applies only to assets. *See, e.g.*, *id.* at 5 (arguing that Burns failed to explain, among other things, "which specific asset(s) related to the Heinle Trust were actually transferred or disposed of"). It does not. By its plain language, the November 2019 Injunction also covers any "interest" Anderson has in his late-mother's estate. His beneficiary status is such an interest.

More, it is irrelevant that Anderson never owned Heinle Trust assets before his disclaimer. *See id.* at 4 ("[W]hen the injunction was issued, none of the Heinle Trust assets had been transferred or distributed to [Anderson][.]"). The November 2019 Injunction also covers funds, assets, or interests that Anderson "may in the future receive" from his late-mother's estate. *See* Nov. 2019 Injunction.

Anderson also relies on his role as the Heinle Trust trustee. Def.'s Resp. Ex. B at 5 ("Walter Anderson . . . is hereby designated as additional Trustee."). He notes that as trustee, he "never made any plans or took any steps to transfer any of the Heinle Trust asset to himself or to designate any of the assets for future transfer to himself." Def.'s

Resp. at 4; *see also id.* at 5 ("No assets were ever designated by the Trustee to [Anderson]."). Anderson again misses the point. The disclaimer ensures that he can *never* receive assets, funds, or anything else from the Heinle Trust. So he foreclosed the Heinle Trust as a source of funds that Burns could use to recover his judgment. The November 2019 Injunction intended to prevent precisely this type of maneuver.

Finally, Anderson claims that the motion is untimely. He argues that Burns "had ample opportunity to raise this argument and only uses it to delay the resolution of this proceeding." *Id.* at 5. He also says that the Court was aware of the disclaimer "and if it believed that the injunction had been violated [it] could have acted Sua Sponte." *Id.* True, the disclaimer happened over a year ago. But meanwhile the parties engaged in more discovery about the Heinle Trust and good-faith mediation. So any delay was justified. Anderson also offers no authority to impose a time limit on a court's "inherent power to enforce compliance with their lawful orders." *Shillitani*, 384 U.S. at 370.

\*   \*   \*

Simply put, Anderson violated the clear and unambiguous terms of the Court's November 2019 Injunction when he disclaimed his interest in the Heinle Trust's assets. And he offers no good reason to excuse the disclaimer. The Court thus will grant Burns's motion to enforce and for civil contempt.

**B.**

The Court next turns to the remedy. "Courts have wide discretion in fashioning remedial sanctions for civil contempt." *SEC v. Levine*, 671 F. Supp. 2d 14, 36 (D.D.C. 2009). Civil contempt sanctions must either "coerce compliance or compensate a

complainant for losses sustained." *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 750 F. Supp. 2d 31, 34 (D.D.C. 2010) (cleaned up).

Burns first asks for the "imposition of a periodic reporting requirement" on Anderson.  Pl.'s Mot. at 13.  Burns wants Anderson to

> [S]end detailed, written financial reports with corroborating documentation on the status of his finances, including those of companies in which he has an interest or management role and the Heinle Trust, directly to Mr. Burns every 3 months for the next 3 years.  These detailed financial reports should indicate funds in any form received by Mr. Anderson from any source.  In addition, Mr. Anderson would also have to include in these reports any updates on any value (whether this be assets, cash, etc.) that came into his possession, custody, or control.

*Id.*  Burns claims that "this reporting obligation is a warranted and efficient path forward for the parties that can be accomplished without the use of judicial resources." *Id.*

The Court agrees.  Anderson violated the November 2019 Injunction less than three weeks after the Court issued it.  These financial reports will ensure that he does not do so again.  *Cf. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d at 38 (appointing a limited receiver to ensure compliance with court injunction).  The reports also will help Burns identify potential sources of funds that he may use to satisfy his judgment.

Next, Burns requests that the Court invalidate Anderson's disclaimer.  Pl.'s Mot. at 13. The Court declines to grant this relief.  Burns does not argue that the disclaimer itself is invalid.  The Heinle Trust authorizes Anderson to disclaim his interest.  *See* Def.'s Resp. Ex. B § 5.2 at 11 (providing that the Multiverse Private Foundation would receive "any assets disclaimed by [Anderson]").  And "a person may disclaim in whole or in part, any interest in or power over property" under Virginia law, Va. Code § 64.2-2603(A), which governs the Heinle Trust, *see* Def.'s Resp. Ex. B § 8.2.1 at 18 ("[T]he law of Virginia shall govern the meaning of this document and validity, legal effect and

8

administration of each trust."). Burns offers no legal authority addressing whether (and how) the Court can revoke the disclaimer.

In any event, the requested relief is inappropriate here. It is not compensatory. And it does not coerce Anderson into complying with the November 2019 Injunction in the future. Revoking the disclaimer would instead serve to sanction Anderson for his past failure to comply, a step too far. *See Cobell v. Norton*, 334 F.3d 1128, 1146–47 (D.C. Cir. 2003) ("Although one may be held in civil contempt for refusing to comply with a court order, a sanction for one's past failure to comply with an order is criminal in nature.").

The Court reiterates that this violation is serious. Future violations of the November 2019 Injunction may lead to harsher sanctions, including fines. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("A contempt fine accordingly is considered civil and remedial if it either coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." (cleaned up)).

## IV.

After four years, this case has reached its natural end. Burns had various opportunities to identify Anderson's recoverable assets through discovery. The parties also mediated. And now Burns has more safeguards in place to ensure Anderson's compliance moving forward. The Court denies Anderson's request for another hearing to allow for him to be questioned as originally contemplated by the Court's scheduling

order because Burns "does not believe that it would be productive to further question Mr. Anderson at this time."[3]  December Status Report at 4.

Burns asked that the case remain open for the Court to resolve his motion. *Id.* at 1.  Now that it has, the case can be closed.  The Court will retain jurisdiction to enforce Anderson's obligations under this Order and the November 2019 Injunction.

For all these reasons, the Court will grant in part and deny in part Plaintiff's motion and deny Defendant's motion.  A separate Order will issue.

Dated:  May 7, 2021                                                                    TREVOR N. McFADDEN, U.S.D.J.

---

[3] The Court also finds that it can resolve this motion on the papers without the hearing that Anderson requests.